**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Robert Johnson, ) | No. CV10-8006-PCT-DGC |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| State of Arizona, et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Defendants filed motions for summary judgment on Plaintiff's four claims. Docs. 92, 94. Plaintiff concedes that summary judgment may be granted on claims 2, 3, and 4, but opposes summary judgment on claim 1. Doc. 97. The motions are fully briefed. Docs. 92-103. The Court will grant Defendant Anderson's motion and will grant in part and deny in part the motion by Defendants Hughes and Navajo County.[1]

**A.    Background.**

After being arrested for driving under the influence of alcohol by Defendant A. Keith Anderson, a Department of Public Safety ("DPS") officer, Plaintiff was taken to the Navajo County Sheriff's substation where he was forced to sit in a chair and his right wrist was placed in a cuff that was chained to the floor. Doc. 57 ¶¶ 10, 11, 17; Doc. 93 ¶ 6. Defendant

---

[1] Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1  Shaun Hughes, a Deputy Sheriff, and another Deputy Sheriff, came nearby at the request of
2  Defendant Anderson. Doc. 57 ¶ 18. Defendant Hughes allegedly stood in front of Plaintiff,
3  placed his knee in Plaintiff's groin, and pressed a weapon, taser, gun, or similar instrument
4  into Plaintiff's neck as means of coercing him to submit to a blood draw. *Id.*; Doc. 93 ¶ 8;
5  Doc. 98 at 4:19-20. Plaintiff does not allege that the instrument was fired, but does allege
6  that he was threatened with death or serious bodily injury by these actions. Doc. 57 ¶ 18.
7  Plaintiff was charged with several DUI offenses, pled guilty to one count pursuant to a plea
8  agreement, and was sentenced. Doc. 92 at 3-4. Plaintiff later filed this action, alleging use
9  of excessive force by officers under color of state law.

**B.     Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**C.     Discussion.**

**1.     Claim 1 as to Defendant Anderson.**

Defendant Anderson moves for summary judgment on the ground that Plaintiff's claim is precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994), because a plaintiff's § 1983 claim is barred where it seeks to undermine the basis for a conviction that has not been previously voided. Doc. 92. Plaintiff asserts that *Heck* is inapplicable to the facts of this case because his conviction was based on his pleading guilty rather than on any evidence obtained by the unconstitutional threat of using a taser. Doc. 97 at 3-4. Defendant Anderson

1  replies that *Whitaker v. Garcetti*, 486 F.3d 572 (9th Cir. 2007), and *Szajer v. City of Los
2  Angeles*, 632 F.3d 607 (9th Cir. 2011), have applied *Heck* to guilty-plea cases. Doc. 102 at
3  4-5. The Court need not decide this issue because another argument is dispositive.

4        Defendant Anderson joins the arguments in Defendant Hughes's motion for summary
5  judgment that the officers' actions as alleged by Plaintiff do not constitute a violation of
6  § 1983. *See* Doc. 94 at 5-6. Plaintiff responds that Officer Anderson's threat to use a taser
7  constituted excessive force. Doc. 97 at 3:2-3, 4:21, 6:22-23. Plaintiff cites *Bryan v.
8  MacPherson*, 630 F.3d 805 (9th Cir. 2010). Doc. 97 at 5. *Bryan* held that the firing of a
9  taser in dart mode constituted an intermediate, significant level of force. 630 F.3d at 810-11.
10 The mere verbal threat to use a taser was not the inquiry in *Bryan*, and Plaintiff cites no other
11 case for the proposition that a threat to use a taser constitutes excessive force. Moreover, the
12 Ninth Circuit stated in *Gaut v. Sunn*, 810 F.2d 923, 925 (1987), that "[w]e find no case that
13 squarely holds a threat to do an act prohibited by the Constitution is equivalent to doing the
14 act itself." Although the Ninth Circuit has observed that drawing weapons and brandishing
15 them before a civilian may constitute excessive force in certain circumstances, *Robinson v.
16 Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002), Plaintiff does not assert that Defendant
17 Anderson drew a taser or brandished it, only that he threatened to do so.

18       Plaintiff has not presented evidence from which a reasonable jury could find in his
19 favor as to Defendant Anderson. The Court therefore will grant summary judgment to
20 Defendant Anderson.

21       **2.    Claim 1 as to Defendant Hughes.**

22       Defendant Hughes asserts that his actions as alleged do not violate § 1983, and that
23 even if they do he is entitled to qualified immunity. Doc. 94 at 5-8. Plaintiff responds that
24 the pressing of a taser against his neck is a constitutional violation, and that qualified
25 immunity does not attach because the right to be free from such intrusions was clearly
26 established for circumstances similar to this case. Doc. 97 at 2-3. Defendant appears to reply
27 that unless the taser was actually fired the law requires a finding of no excessive force, and
28 also restates his earlier arguments. *See* Doc. 99.

1    Plaintiff had been arrested for driving under the influence and brought to the sheriff's substation. When Defendant pressed a taser against his neck, Plaintiff asserts, Plaintiff was "handcuffed and chained to the floor in a seated position," could not have attempted to flee, and was no threat to officers or others in the substation. *See* Doc. 97 at 2:21-22, 5:14-17. Defendant Hughes asserts that Plaintiff "refused to sit still for a blood draw after a warrant was obtained" (Doc. 99 at 4:11-12; *accord* Doc. 95 at 3:1-2), admits to putting his "right hand on Plaintiff's arm and shoulder to keep him seated," asserts that Plaintiff's cuff was loosened with a warning from Officer Anderson that further struggling would result in tasing, and that Plaintiff stopped resisting afterward (Doc. 95 at 3). Defendant also points to witness testimony that "no one took a taser from anyone's utility belt" and that Defendant "did not place a knee in Plaintiff's groin area." *Id*. at 4:9-14. It is not entirely clear from Plaintiff's deposition testimony whether the cuff was loosened before or after the taser was allegedly placed on his neck, but the testimony asserts the cuff was not entirely removed – only loosened. Doc. 95-2 at 29-31. Plaintiff admits not being able to see the taser because it was behind his back. *Id.* at 29. The disputed factual assertions raise issues of material fact about whether Plaintiff was actively resisting a blood draw, whether his resistance posed a threat to officers or himself, and whether a taser was actually pressed against his neck.

 Assuming Plaintiff's version of the facts as true, however, the Court must decide whether Defendant Hughes would be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (concluding that "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings [based on the alleged facts] so that the costs and expenses of trial are avoided where the defense is dispositive"); *accord Robinson*, 278 F.3d at 1012 (noting that "issues of qualified immunity should be determined at the earliest possible stage"). The qualified immunity inquiry is a two-step process: (1) whether the violation of a constitutional right occurred; and (2) whether the right was clearly established. *Saucier*, 533 U.S. at 201.

 Brandishing a weapon before a civilian may, in certain circumstances, constitute excessive force in violation of § 1983. *Robinson*, 278 F.3d at 1015. It follows, therefore,

- 4 -

that firing a weapon is not necessarily required for a finding of "usage of force," and that the mere pressing of a taser against a seized person with the stated objective of firing can be sufficient. Whether such use of force is excessive, however, is determined by whether the force was "'objectively reasonable' in light of the facts and circumstances confronting the officer." *Id.* at 1013 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1013-14 (citing *Graham*, 490 U.S. at 397).

Under Plaintiff's version of the facts as discussed above and as supported by his deposition, the use of force was excessive: Plaintiff was arrested for a non-violent crime, was sitting handcuffed to the floor by a chain, and Defendant allegedly pressed a taser to his neck prior to a blood draw attempt. Under these facts, such use of force was not objectively reasonable. The Court must still determine, however, whether Plaintiff's right to be free from such force was clearly established.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Plaintiff argues that the DPS Phlebotomy Manual ("Manual") states "[o]fficers shall not use an electronic control weapon (ECW) hard impact control weapon, chemical irritants, or any other weapon to subdue the person during the blood-draw." Doc. 96 at 6. Plaintiff does not allege that the taser was fired – only that it was pressed against his neck. Moreover, Plaintiff alleges that Officer Anderson was the licensed phlebotomist, not Defendant Hughes, and does not allege that Hughes knew of the Manual.

Although the Manual is not an adequate source of notice for Defendant Hughes, the Ninth Circuit *Robinson* opinion, issued in 2002, is. *Robinson* involved the brandishing of

- 5 -

a gun, not a taser, but the Ninth Circuit observed that the psychological effect of the use of such force is the relevant inquiry. *Robinson*, 278 F.3d at 1015 ("We agree with the Fifth Circuit that '[a] police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause *physical* injury, but he has certainly laid the building blocks for a section 1983 claim against him." (emphasis and alterations in original) (citing *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998)). Here, Plaintiff testified that he was afraid for his life. Doc. 95-2 at 29 ("I do not recall where his left hand was. I was concentrating on what was on my neck. I thought he was going to kill me."). Such fear of death, if genuine and objectively reasonable, would be the same from a taser as from a gun.

In light of the above, the Court finds that summary judgment is not proper, and that Plaintiff's testimony, which could be believed by the jury, leads to the conclusion that Defendant Hughes is not entitled to qualified immunity as a matter of law at this stage of the proceedings.

### 3. Claim 1 as to Defendant Navajo County.

Defendant Navajo County argues in part that it cannot be held vicariously liable for Defendant Hughes's actions, citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Plaintiff does not address this argument in his response. Doc. 97. The Court finds the County's argument persuasive and will therefore grant summary judgment.

### 4. Claims 2, 3, and 4.

Plaintiff concedes that summary judgment may be granted to Defendants on claims 2, 3, and 4. Doc. 97. The Court will therefore grant the motions as to these claims.

**IT IS ORDERED:**

1. Defendant Anderson's motion for summary judgment (Doc. 92) is **granted**.

2. Defendant Hughes and Navajo County's motion for summary judgment (Doc. 94) is **granted in part** and **denied in part** as stated above. Defendant Navajo County shall be dismissed from the case.

DATED this 18th day of April, 2011.

*David G. Campbell*
United States District Judge